**In re James A. and Theolinda GOMES, Debtor.**

**Bankruptcy No. 85–00190.**

United States Bankruptcy Court, D. Hawaii.

Dec. 30, 1985.

Emmet White, Honolulu, Hawaii, for plaintiff.

Joseph Hu, Honolulu, Hawaii, for defendant.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW RE: MOTION TO LIFT STAY

JON J. CHINEN, Bankruptcy Judge.

The Motion to Lift Stay filed by Hawaii National Bank, Honolulu ("Movant") came on for hearing before the undersigned judge on September 4, and November 6, 1985. Movant appeared through its attorney, Emmet White, Esq., and James A. and Theolinda Gomes, ("Debtors"), appeared through their attorney, Joseph S.Y. Hu, Esq. The Debtor James A. Gomes was also present. The Court having heard and considered the testimony together with the exhibits and memoranda herein and the arguments of counsel and being fully advised in the premises, makes the following Findings of Fact and Conclusions of Law.

### FINDINGS OF FACT

1. This Court has jurisdiction to hear this matter pursuant to Bankruptcy Rules 4001(a) and 9014 and section 362 of the Bankruptcy Code.

2. The subject of the motion to lift stay consists of that certain fee simple real property situated on Ahuimanu Road, Kahaluu, Koolaupoko, Oahu, Hawaii, having tax key no. 4–7–48–12, First Division, with an area of approximately 34.308 acres.

3. Movant is a bank authorized to do business in the State of Hawaii and has its principal place of business in Honolulu, Hawaii.

4. Debtors are residents of the County of Honolulu, State of Hawaii.

5. Movant has a first mortgage, an additional charge mortgage and a second mortgage on the subject property.

6. For Debtor's failure to pay the monthly sums under the mortgages, Movant initiated a foreclosure action in the state circuit court in January 1984. On February 28, 1985, the circuit court entered

its Findings of Fact; Conclusions of Law; Order Granting Plaintiff's Motion for Summary Judgment and for Interlocutory Decree of Foreclosure ("Order"). Said Order appointed a commissioner to sell the subject property at public auction. (A copy of said Findings of Fact; Conclusions of Law; and Order was introduced in evidence as Plaintiff's Exhibit "1".)

7. The public auction was scheduled for May 1, 1985. However, on April 30, 1985, prior to the scheduled auction, Debtors filed their petition for voluntary petition under Chapter 11 of the United States Bankruptcy Act. (11 U.S.C. Chapter 11). By reason of Debtor's interest in the property, the scheduled auction and Movant's foreclosure action were stayed pursuant to Section 362 of the U.S. Bankruptcy Code.

8. Based upon the testimony of Roland Regidor, Movant's employee, and the preliminary title report (Plaintiff's Exhibit 2), the Court finds the following breakdown of the indebtedness from Debtors to Movant:

| | | |
|---|---|---|
| 1st Mortgage with Movant Principal Balance | $50,000.00 | |
| Accrued Int. 6/28/83 to 7/31/85 | 14,163.78 | |
| | | $64,163.78 |
| Additional Charge Mortgage with Movant Principal Balance | $50,000.00 | |
| Accrued Int. 6/28/83 to 7/31/85 | 14,163.78 | |
| | | $64,163.78 |
| 2nd Mortgage with Movant Principal Balance | $20,000.00 | |
| Accrued Int. 6/28/83 to 7/31/85 | 5,673.68 | |
| | | $25,673.68 |

Advances:

| | | |
|---|---|---|
| Attorney's Fees paid from 3/9/84 to 1/31/85 | $ 3,302.00 | |
| Attorney's Costs | 217.37 | |
| Lien Report | 104.00 | |
| Lot Book Report | 67.20 | |
| Filing Fees | 6.00 | |
| | | $ 3,696.55 |

The Interlocutory Decree Foreclosure (Plaintiff's Exhibit "1") provides for per diem interest at the rate of $50.95 per day, plus attorney's fees and costs.

9. In addition, other liens on the subject property are as follows:

| | | |
|---|---|---|
| Delinquent Real Property Taxes to 4/1/85 | $ 4,408.29 | |
| 3rd Mortgage with Brian R. Cook Original Principal | $20,000.00 | |
| Federal Tax Lien 9/13/83 | 398.68 | |
| Federal Tax Lien 1/3/84 | 317.03 | |
| | | $25,124.10 |

10. The total liens as calculated above is $182,821.79.

11. Marcus Nishikawa, the court-appointed commissioner, testified that 18 people attended the auction. However, he announced that the auction was postponed as a result of the filing of the bankruptcy petition by Debtors. He also stated that there had been an offer to purchase the property for $170,000.00 in cash.

12. Jon F. Yamaguchi, on behalf of Movant, testified, as a qualified appraiser, that the market value of the subject property, under an Appraisal dated March 16, 1985, which he had rendered pursuant to Mr. Nishikawa's request, and was introduced into evidence as Plaintiff's Exhibit "3", was $206,000.00 (approximately $6,000.00 per acre). Mr. Yamaguchi also opined that at an auction-type sale, the estimated value was between $155,000.00 and $175,000.00.

13. In arriving at his estimated market value, Mr. Yamaguchi researched and physically inspected 12 preservation zoned comparable properties in the Windward district which had been sold during the previous five years. He testified that presently, the highest and best use of the subject vacant land was for one single family residential unit on the entire acreage.

14. Mr. Adolph Mendonca, on behalf of Debtors, testified, as a qualified appraiser, that the market value of the subject property, under an Appraisal dated May, 1984, which he had rendered pursuant to Mr. Gomes' request, and was introduced into evidence as Defendant's Exhibit "1", was $307,159.00 (approximately $8,953.00 per

acre) and "fill" material was $100,000.00. Mr. Mendonca estimated the "fill" material will bring in at least a million dollars, but he gave it a value of only $100,000.00. He did not present any evidence of any demand for such fill or the time or cost to sell such fill.

15. Mr. Mendonca used only one comparable in his Appraisal, a 1979 sale. This comparable is the same as Comparable No. 8 in Mr. Yamaguchi's Appraisal.

16. In arriving at the estimated market value in his Appraisal, Mr. Mendonca considered the possibility and probability of re-zoning the land to a classification which would permit subdividing the land into smaller lot sizes.

17. In his testimony, Mr. Mendonca mentioned a grading contract for 5.5 acres of the subject parcel, but the contract was not further identified or placed into evidence.

18. Mr. Mendonca further testified that it would take a long time to completely subdivide the subject parcel, perhaps up to 30 years. He did not submit any plan for a subdivision, did not estimate the cost of such subdivision.

19. Mr. Mendonca also testified that the value of the subject land "as is" on the day of his testimony (November 6, 1985), was at least $5,000.00 per acre.

20. Mr. Gomes testified that he has not made an application for subdivision of the subject property. He also testified that he had a grading permit but that it had been cancelled and that presently he did not have a grading permit.

21. Mr. Gomes testified that in the late 1970s, he sold the parcel for $570,000.00 on an Agreement of Sale, but had to take the property back because the purchaser could not perform. He also estimated the value of the fill material to be worth approximately $2,250,000.00. But he produced no evidence of any demand for such fill nor the time and cost of selling such fill.

## CONCLUSIONS OF LAW

1. The Court finds that the total indebtedness encumbering the property as of December 31, 1985 will be $190,635.00, plus additional attorney's fees and costs.

2. Because neither Mr. Gomes nor Mr. Mendonca offered any plan of subdividing the property, showing the expected costs of any subdivision and the definite time necessary to complete a sale of the subdivided property, the Court finds that there is insufficient basis to consider any subdivision of the property towards its market values, and that it is too speculative in nature.

3. Whereas, Mr. Yamaguchi's studied 12 comparables in arriving at his market value, Mr. Mendonca used only one comparable, being one of the 12 used by Mr. Yamaguchi. Thus, the Court finds in this case Mr. Yamaguchi's appraisal more reliable than that of Mr. Mendonca.

4. Though both Mr. Mendonca and Mr. Gomes estimated the value of the fill about $1,000,000.00 and $2,250,000.00 respectively, Mr. Mendonca actually gave it a value of $100,000.00. This shows the speculative nature of their estimate. There is no permit to grade the fill. No plan has been submitted for obtaining such a permit and the conditions that must be met and the time necessary to obtain such a permit were never discussed. Also, neither Mr. Mendonca nor Mr. Gomes presented any evidence of any demand for the fill and neither one estimated the time and cost necessary to sell the fill. The Court therefore, gives only a present nominal value of $15,000.00 to such fill.

5. Based on Mr. Yamaguchi's appraisal of $208,000.00, plus the fill material at $15,000.00, the Court finds the present market value of the subject property to be $223,000.00.

6. As of December 15, 1985, the amount of lien on the property is approximately $190,000.00, plus attorney's fees and costs. Since the property is worth $223,000.00, there appears to be an equity of 33,000.00. However that equity is insufficient.

7. If the property is sold at $223,000.00, there must be deducted real estate commission and closing costs estimated at 10% of

the sale or $22,300.00. In addition, if it takes 6 months to sell and close the sale, which period is very optimistic, there will be additional interest in the sum of $9,891.00.

8. Deducting $31,191.00 ($22,300.00 plus $9,891.00) from $223,000.00 leaves a net of $191,909.00. Since there will be owing $190,635.00 plus attorney's fees and costs as of December 31, 1985, the Court finds that there is no adequate protection to the Bank and hereby lifts the stay.

An Order will be signed upon presentment.